UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 17-101-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NESTOR BARRON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Nestor Barron has moved to suppress the fruits of law enforcement's July 18, 2017, search of 629 Dartmoor Drive in Lexington.[1] [Record No. 31] The motion was referred to United States Magistrate Judge Robert Wier for review and issuance of a report and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). Neither party requested an evidentiary hearing. After fully considering the record, Magistrate Judge Wier issued a Recommended Disposition on October 12, 2017, concluding that the defendant's motion should be denied. [Record No. 53] Defendant Barron thereafter filed objections to the Recommended Disposition. [Record No. 54]

Having reviewed the record along with the Recommended Disposition and the defendant's objections, the Court concludes that the motion to suppress should be denied.

---

[1] This Court denied the motion as moot given the Superseding Indictment returned on October 5, 2017. [Record No. 47] Magistrate Judge Wier reinstated the motion during the defendant's arraignment on the Superseding Indictment and deemed the matter submitted. [Record No. 51]

**I.**

Lexington Police Detective Matt Evans swore to the affidavit at issue and, on July 17, 2017, obtained a warrant to search the residence at 629 Dartmoor Drive, two vehicles, and the person of Fernando Rafael Lara Salas.[2] [Record No. 31-1] In his affidavit, Detective Evans described an investigation of a large-scale cocaine trafficking organization that untimely led police to Lara Salas in early 2013. *Id*. at p. 5. After police executed a search warrant at a residence in Lexington and seized 45 kilograms of cocaine, examination conducted in April 2014, determined the seized drugs contained Lara Salas's fingerprints. *Id*. Lara Salas was subsequently indicted on federal drug trafficking charges, pled guilty, and was deported. Additionally, Detective Evans described the prior surveillance and interaction with Lara Salas that took place in late 2013. He stated that Lara Salas had been living in Lexington, but was later arrested in Maryland for attempting to coordinate a two-kilogram cocaine drug delivery. *Id*. Evans travelled to Maryland on November 12, 2013, under the assumption that Lara Salas wanted to cooperate with Lexington Police. However, Lara Salas changed his mind and no longer wished to speak to Detective Evans upon his arrival. *Id*.

In April 2016, Detective Evans was "notified by several qualified CI's that Fernando Garcia had returned to Lexington and had continued to sell large amount of cocaine and heroin." *Id*. On the following page of the affidavit, Evans averred that Lara Salas has been arrested a number of times in Lexington under several aliases. He further indicated that the previously-mentioned CI's had heard that Lara Salas and his wife Nancy had recently

---

[2] Lara Salas has many aliases. *See e.g.*, Record No. 31-1, p. 1. For consistency, the Court will use "Lara Salas" throughout this Memorandum Opinion.

purchased a house and that Nancy drove a red Toyota Camry while Lara Salas drove a green Chevrolet Avalanche. *Id.* at 6.

During the first week of August (2016),[3] Detective Evans was conducting surveillance in the area of Dartmoor Drive, in search of Humberto Alvarez, a fugitive from a previous case. *Id*. During this surveillance, Evans located a red Toyota Camry, a Blue Chevrolet Avalanche, and a grey Dodge Charger parked in the driveway of 629 Dartmoor Drive. *Id*. He then determined that the Toyota and Dodge were registered to either Lara Salas or Nancy. *Id*.

Detective Evans further "conducted surveillance at 629 Dartmoor Drive on numerous occasions at all hours of the day and night and [] confirmed that it is Nancy and [Lara Salas'] primary residence." *Id.* Evans noted that he has observed both Lara Salas and Nancy "coming and going" from the residence on multiple occasions. *Id.* He further indicated that, based on the fact that Lara Salas and Nancy have not told any of the CI's about their residence, he believed that this is where they store "cocaine, heroin, and or large sums of cash." *Id*.

Detective Evans contacted Cincinnati DEA TFO Chad Whitford on January 16, 2017, and informed him of the Lara Salas' drug trafficking operation and that, according to Detective Evans' CI's, Lara Salas had several customers in the Cincinnati area. *Id*. at p. 7. The affidavit then outlines facts demonstrating that Lara Salas would often travel north to 1429 Ambrose

---

[3] Detective Evans did not indicate the year. However, as the Magistrate Judge observed, by reading the affidavit in a common sense way, August 2016 is the only logical conclusion. *See U.S. v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004). Detective Evans stated in two paragraphs prior that in April 2016 he "was notified by several qualified CI's that [Lara Salas] had returned to Lexington." Record No. 31-1, p. 5. Therefore, by reading the affidavit in a chronological fashion, Detective Evans learned of the Laura Salas's arrival in April 2016. Therefore, this surveillance must have occurred in August 2016.

Avenue in Cincinnati, Ohio, where he and his associate Jorge Macias would meet with Robbie Warren. *Id*.

On January 16, 2017, Lara Salas, his son, Macias, and another unknown Hispanic male were observed arriving at the Cincinnati address and using a key to enter the premises. *Id*. Warren then arrived at the address and what was believed to be a money exchange occurred. Independent investigation of Warren (which included observed daily trips to the Ambrose Avenue location) followed by what appeared to be drug drops, led Detective Evans and assisting investigators to "believe that [Lara Salas], his partner Jorge Macias, and his associates are supplying Robbie Warren with large amount of narcotics. *Id*.

Next, Detective Evans advised that a CI contacted and advised him that Lara Salas provided the CI with a quantity of heroin, which was provided as a representative sample of a much larger amount the two were selling, advising that that they had "kilogram quantities of heroin for sale." *Id*. at p. 8. Additionally, Detective Evans stated that defendants from a long term investigation of a large drug trafficking organization were arrested and interviewed in April 2017. The arrestees advised that they had sold Lara Salas multiple kilograms of heroin on multiple occasions. Detective Evans also explained that, in June 2017, another defendant from a separate drug trafficking investigation advised that Lara Salas contacted him seeking to purchase multiple kilograms of cocaine. *Id*. at p. 9. The high-level cocaine trafficker told Lara Salas that he had "not received his drug load yet[,]" but that when he did, he would contact Lara Salas. *Id*. He then advised Detective Evans that, when he called Lara Salas a couple days later to see "if he was still looking to purchase several kilograms of cocaine[,]" Lara Salas told him that he already received his supply form another source. *Id*.

Finally, within 72 hours of executing the affidavit, Detective Evans was contacted be a qualified CI who advised that Lara Salas and Macias had recently received another drug shipment. *Id*. The CI set up a delivery of a quantity of heroin, which Detective Evans later observed. *Id*. Detective Evans also observed Macias driving Lara Salas's Chevrolet Avalanche to the meeting with the CI, where Macias provided the CI with a "quantity of suspected heroin and advised that he and [Lara Salas] had large amounts for sale." *Id*. Based on all the information contained in the affidavit, Detective Evans stated that there was probable cause to believe that there would be evidence of drug trafficking located at Lara Salas residence at 629 Dartmoor Drive. *Id*.

Based on this affidavit, Judge Thornton issued the requested search warrant on July 17, 2017. *Id.* at p. 1. However, Barron contends that the application for the search warrant did not establish probable cause. *Id*.

The Fourth Amendment to the United States Constitution only allows the issuance of a warrant upon a showing of probable cause. U.S. Const. amend. IV. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006). When determining whether probable cause exists for a warrant, an issuing judge must consider the totality of the circumstances. *United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2003). A reviewing court should pay great deference to the issuing judge's probable cause determination. *Illinois v. Gates*, 462 U.S. 213, 236 (1983). The court will uphold the issuing judge's decision if she had a "substantial basis" for concluding that probable cause existed. *Id*. Accordingly, the reviewing court considers the totality of the circumstances, rather than scrutinizing the warrant line-by-line. *Jackson*, 470 F.3d at 306.

In his Recommended Disposition, Magistrate Judge Wier found that Fayette District Judge Megan Thornton had probable cause to issue a search warrant for Lara Salas residence at 629 Dartmoor Drive. [Record No. 53, p. 20] After reviewing the record, the undersigned fully and completely agrees. And because Judge Thornton properly issued the warrant, analysis of the parties' arguments regarding the good faith exception is unnecessary.

**II.**

Barron objects to the Magistrate Judge's recitations of portions of the affidavit and argues that probable cause was lacking because: (i) the affidavit failed to establish a nexus between drug trafficking activity and the Dartmoor Drive location; and (ii) information contained in the affidavit was stale, at least as to 629 Dartmoor Drive.

A.  **Timing of the Surveillance**

Barron claims that the Magistrate Judge's presumption that the surveillance described in paragraph 7 of the affidavit occurred in August 2016, is not supported. [Record No. 54, p. 2] He argues that the Court cannot assume the timeliness of events in a warrant affidavit and relies on *United States v. Hython*, 443 F.3d 480 (6th Cir. 2006), as support.

In *Hython*, the affidavit in issue contained only one undated drug transaction which was not supported by any further police investigation. *Id*. at 486. The court reasoned that, because the affidavit contained no indication of ongoing investigation, additional controlled buys, or further surveillance of the address or alleged supplier, the affidavit could not possibly "serve to establish the house was the site of an ongoing criminal enterprise, or ground the undated buy within a finite period of investigation." *Id*. at 488-89.

This case is vastly different. The affidavit at issue here details ongoing investigation and surveillance of the residence and targets, and also includes a statement from the Detective Evans that "[d]uring the month of April 2016[,] [he] was notified by several qualified CI's that [Lara Salas] had returned to Lexington and had continued to sell large amount of cocaine and heroin." [Record No. 31-1, p. 5] The Magistrate Judge cited this statement, along with the details of Lara Salas deportation and return, to conclude that when Detective Evans swore he conducted surveillance in the area of Dartmoor Drive during the first week of August, it referenced August 2016. The Court agrees with the Magistrate Judge on this point and finds by reading the affidavit in a common sense way, this surveillance occurred in August of 2016.

B.  **Lara Salas' Primary Residence**

Barron next argues that the Magistrate Judge concluded that 629 Dartmoor Drive was the primary residence of Lara Salas, even though the affidavit does not establish the location of Lara Salas primary residence. [Record No. 54, p. 3] He contends that the "affidavit does not indicate any investigation to determine whether Mr. Lara Salas and his wife owned 629 Dartmoor Drive, rented the home or were simply guests in the home at this unknown point in time." *Id.*

However, Detective Evans swears in his affidavit that he has "conducted surveillance at 629 Dartmoor Drive on numerous occasions at all hours of the day and night and has confirmed that it is Nancy and [Lara Salas'] primary residence." [Record No. 31-1, p. 6] Additionally, as the Magistrate Judge noted, the issuing Judge had a substantial basis to believe that 629 Dartmoor Drive was Lara Salas' primary residence because of several factors including: (i) reliable CI's advised Detective Evans that Nancy and Lara Salas had recently

purchased a home [*Id.* at p. 6]; (ii) Detective Evan's observations of Lara Salas' and Nancy's vehicles parked in the driveway at 629 Dartmoor [*Id.*]; (iii) Lara Salas' 2011 Toyota Camry and 2011 Hyundai 4 door registered at 629 Dartmoor Drive [*Id.* at p. 3]; (iv) Detective Evans' observations of Nancy and Lara Salas "coming and going from" 629 Dartmoor Drive on numerous occasions [*Id.* at p. 6]; and (v) Detective Evans' observations that every morning Macias traveled to 629 Dartmoor Drive to pick up Lara Salas [*Id.* at p. 9].

Barron argues that the reference to the home purchase is presumed to be of a house other than 629 Dartmoor Drive, but does not provide any support for that presumption. Further, he insists that there is inconsistency in the affidavit because Detective Evans states that Lara Salas and Nancy "have gone to great lengths to attempt to keep their primary residence a secret," yet also states that the both of them openly parked their cars in the driveway, openly came and went from the residence, and Lara Salas met his co-conspirator at the location every day. [Record No. 54, p. 3]

Barron ignores the standard for probable cause in making these arguments. An affidavit establishes probable cause when it demonstrates the *probability* of criminal activity. *See Illinois v. Gates*, 462 U.S. 213, 235 (1983). Certainty is not required. *Id.* at 231. The affidavit contains sufficient facts to indicate that Lara Salas' primary residence was 629 Dartmoor Drive. Proof beyond a reasonable doubt that 629 Dartmoor Drive was Lara Salas primary residence was unnecessary.

**C.    Nexus**

Barron next maintains that the warrant was not issued based on probable cause because there was an inadequate nexus between any illegal activity and 629 Dartmoor Drive. [Record No. 54, p. 4] To satisfy the probable cause requirement, "circumstances must indicate why

evidence of illegal activity will be found in a particular place. In other words, there must be a nexus between the place to be searched and the evidence sought." *United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004) (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)).

Barron's contention that the affidavit did not connect 629 Dartmoor Drive to the drug trafficking activity is unfounded. In his Recommended Disposition, Magistrate Judge Wier cites *United States v. Penney*, 576 F.3d 297, 311 (6th Cir. 2009), and *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (citing cases), for the proposition that an issuing judge may infer that drug traffickers use their residences to store drugs and otherwise further their drug trafficking activities. While Barron argues that this is inconsistent with the Sixth Circuit's recent decision in *United States v. Brown*, 828 F.3d 375 (6th Cir. 2016), this Court agrees with Magistrate Judge Wier that the determination in this case is consistent with *Brown*.

The Sixth Circuit acknowledged in *Brown* that, "in some cases, we have permitted judges to infer a fair probability of finding evidence in a residence even though the affidavit did not state that such evidence has been observed directly." *Id*. at 383. However, the court reiterated that is has never held "that a suspect's 'status as a drug dealer, *standing alone*, gives rise to a fair probability that drugs will be found in his home.'" *Id*. (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)) (emphasis added). "Rather, [the Circuit has] required some reliable evidence connecting the known drug dealer's ongoing criminal activity to the residence; that is, [the Court of Appeals has] required facts showing that the residence had been used in drug trafficking, such as an informant who overserved drug deals or drug paraphernalia in or around the residence." *Id*. Alternatively, the Sixth Circuit has "found the nexus sufficient even though the affidavit did not contain facts showing that the residence had

been used in drug trafficking" when "the affidavit[] did not just establish that the defendant[] [was a] drug dealer[], but contained overwhelming evidence that the defendant[] [was a] major player[] in a large, ongoing drug trafficking operation." *Id.* at fn. 2.

Here, the affidavit is replete with *overwhelming* evidence that Lara Salas was a major player in a large, ongoing drug trafficking operation. As the Magistrate Judge noted, the evidence in the affidavit includes: (i) the 2013 felony drug conduct and later deportation [Record No. 31-1, p. 5]; (ii) the Baltimore arrest for trying to set up a two kilogram cocaine delivery [*Id.*]; (iii) indication that drug trafficking warrants existed out of Arizona at the time of the 2013 arrest [*Id.*]; (iv) the CI information; (v) the 2017 de-briefs, indicating high volume exchanges with known, current traffickers [*Id.* at pp. 8-9]; (vi) and the observed, repetitive conduct involving travel to and from Cincinnati, where a suspected stash house for the organization was located [*Id.* at p. 7].

### D.     Temporal Element

Finally, Barron asserts that the warrant was based on stale information. "[A] warrant is stale if the probable cause, while sufficient at some point in the past, is not insufficient as to evidence at a specific location." *United States v. Abboud*, 438 F.3d 554, 572 (6th Cir. 2006). In examining such clams, reviewing courts "consider the following factors: (i) the character of the crime; (ii) the criminal; (iii) the thing to be seized; and (iv) the place to be searched." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (citing *Abboud*, 438 F.3d at 572-73.

Magistrate Judge Wier explains in his Recommended Disposition that the affidavit established ongoing drug trafficking through an investigation that stretched back to 2012, and continued again in 2016, when Detective Evans learned, through CI's, of Lara Salas' return to

Lexington and re-involvement in drug trafficking. [Record No. 53, p. 18] Magistrate Judge Wier found that the intense 15-month investigation that followed gave Judge Thornton "a reasonable basis to believe that Lara Salas was engaged in an ongoing trafficking enterprise" and cited to *United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) for the contention that "evidence of ongoing criminal activity will generally defeat a claim of staleness." Additionally, Magistrate Judge Wier found that the facts showed that that the criminal activity occurred in a "secure operational base," thus, the passage of time becomes less significant. *See Id*. Most notably, Magistrate Judge Wier pointed to the facts regarding the suspected heroin delivery to a CI by Macias, *in Lara Salas vehicle*, which occurred within 72 hours of the application for the warrant. [Record No. 53, p. 19]

Barron mainly rests his arguments regarding staleness on the theory that the Judge Thornton and Magistrate Judge Wier were incorrect that 629 Dartmoor Drive was Lara Salas' primary residence and the dates for certain facts in the affidavit were unknown. However, as already discussed *supra* Part II, A & B, the conclusion that 629 Dartmoor Drive is Lara Salas' primary residence and the timing of certain events are supported by a logical reading of the affidavit.

Further, even though Barron attempts to argue that while the activities described in the Affidavit are not ongoing and continuous due to the facts that at times Lara Salas is seeking to restock his drug supply, the Affidavit clearly established that Lara Salas was a key player in a large ongoing drug trafficking operation, and while he may have gone a few days without any drugs in his possession, evidence associated with the continuing trafficking operation would be found in 629 Dartmoor Drive. As the Magistrate Judge noted, the evidence could include drugs, but it also could fairly include proceeds, safes, papers, and other confirmatory evidence

of the illegal large scale drug trafficking operation. For all of these reasons, Barron's staleness claims fail.

### III.

For the reasons outlined above, it is hereby

**ORDERED** as follows:

1. The Recommended Disposition of Magistrate Judge Robert E. Wier [Record No. 53] is **ADOPTED and INCORPORATED** by reference.

2. The defendant's objections to the Recommended Disposition [Record No. 54] are **OVERRULED**.

3. Defendant Nestor Barron's motion to suppress [Record No. 31] is **DENIED**.

This 7th day of November, 2017.

Signed By:
*Danny C. Reeves* DCR
United States District Judge